**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nutrition Distribution LLC, | No. CV-18-00762-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Juggernaut Nutrition LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant Juggernaut Nutrition, LLC's ("Defendant") Motion to Dismiss the First Amended Complaint. (Doc. 23). Plaintiff Nutrition Distribution, LLC has responded, (Doc. 25), and Defendant has replied, (Doc. 27).

**I.     Background**

Plaintiff, an Arizona limited liability company, and Defendant, a Florida limited liability company, are competitors in the dietary supplement market. (Doc. 17 at 1–2). Defendant sells products that contain the chemical DMAA. (*Id.* at 2). Plaintiff sells a similar product that does not contain DMAA that was specifically designed "to fill the market void left by the eventual absence of soon-to-be illegal DMAA." (*Id.* at 3–4). In 2012, the FDA sent warning letters to manufacturers whose products contained DMAA "questioning DMAA's safety and challenging [the manufacturers'] claims that the ingredient even qualifies as a dietary supplement." (*Id.*) Following receipt of this letter, usage of DMAA receded, which allowed Plaintiff's DMAA-free product to obtain commercial success. (*Id.*) In 2016, however, DMAA returned to the market, which has,

according to Plaintiff, negatively affected Plaintiff's business. (*Id.*)

Plaintiff contends that DMAA is a dangerous and illegal chemical and that Defendant has engaged in false advertising under the Lanham Act by: (1) not disclosing the adverse health effects of DMAA; (2) implying that DMAA is a naturally occurring chemical; and (3) not disclosing that numerous professional sports associations have banned DMAA, which is particularly egregious in light of Defendants' practice of marketing its products to athletes who compete in competitions run by those associations. (*Id.* at 2–3). By doing so, Plaintiff argues, Defendant has lured consumers who would otherwise buy Plaintiff's products if they were aware of the material misstatements and omissions in Defendant's advertising, which has harmed Plaintiff's business. (*Id.* at 9). Defendant has moved to dismiss Plaintiff's suit for lack of personal jurisdiction. (Doc. 23).

## II.     Governing Law

Generally, a federal court has personal jurisdiction over non-resident domestic defendants to the extent allowed by the state in which the court sits. Fed. R. Civ. P. 4(e), (k); *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Arizona law provides for personal jurisdiction to the extent allowed by the Constitution of the United States. *See* Ariz. R. Civ. P. 4.2. The Due Process Clause of the Fourteenth Amendment limits a state's power to grant personal jurisdiction over a defendant to a tribunal. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).

Due process requires that a defendant "have certain minimum contacts with . . . [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This minimum contacts framework gives rise to two forms of jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779–80 (2017). Under specific jurisdiction, a court can hear claims related to a defendant's voluntary in-state activities. *Id.* at 1780. Under general jurisdiction, a court

can hear any claim against a defendant who can be "fairly regarded as at home" in the state. *Goodyear*, 564 U.S. at 919.

Where a defendant moves to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Where a court resolves the issue of personal jurisdiction solely by reference to the parties' moving papers and filed documents, a plaintiff satisfies this burden by making "only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2011)). In such a case, uncontroverted statements in the plaintiff's complaint are taken as true, and conflicts between facts contained in affidavits are resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### III. Analysis

Plaintiff does not argue that Defendant is subject to general jurisdiction in Arizona, (Doc. 25); accordingly, the Court will only consider Plaintiff's contention that Defendant is subject to specific jurisdiction.

The specific jurisdiction inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). This analysis is concerned with the defendant's contact—rather than a third party's—with the forum state itself, rather than with a person who resides there. *Id.* at 1122. Therefore, a defendant's mere contact with a plaintiff, without more, is insufficient to support specific jurisdiction. *Id.* at 1223.

The minimum contacts sufficient to support specific jurisdiction exist where: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l*

*Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). The plaintiff has the burden of establishing the first two factors. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff makes that showing, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). In performing a personal jurisdiction analysis, a court looks to purposeful availment where the cause of action lies in contract, and looks to purposeful direction where the cause of action lies in tort. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Lanham Act claims sound in tort; accordingly, the purposeful direction test applies. *See Liberty Ammunition, Inc. v. United States*, 101 Fed. Cl. 581, 591 (Fed. Cir. 2011) ("Violations of the Lanham Act sound in tort"); *Omega RV v. RV Factory, LLC*, No. 1:16-CV-00204-EJL, 2017 WL 1943952, at *3–4 (D. Idaho May 10, 2017) (analyzing Lanham Act violation under the purposeful direction test); *Warner Bros. Home Entm't, Inc. v. Shi*, No. CV 12-07753 DMG (PLAx), 2013 WL 12116586, at *4 (C.D. Cal. Jan. 29, 2013).

Plaintiff contends that two of Defendant's contacts with Arizona justify the exercise of personal jurisdiction. First, Plaintiff notes that Defendant operates a commercial website that is accessible in Arizona. (Doc. 25 at 5–7). Second, Plaintiff maintains that Defendant's products can be found in at least five stores in Arizona. (*Id.*)

### A. Defendant's Website

Plaintiff contends that Defendant has an interactive website justifying the imposition of personal jurisdiction. Defendant's website is hosted in Florida, is generally accessible worldwide, and offers Defendant's products for sale. (Doc. 15-1 at 2). Defendant affirms, however, that no individual in Arizona has ever purchased products from Defendant's website. (*Id.*)

Defendant's website is "interactive" in the sense that "users can exchange information" with the website; specifically, users can purchase Defendant's products from the website. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Accordingly, "the likelihood that personal jurisdiction can be constitutionally

exercised is directly proportionate to the nature and quality of commercial activity that . . . [Defendant] conducts over the Internet." *Id.* at 419 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The website must do "something more" than advertise products "to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* at 418. Courts within this circuit have interpreted "something more" to require a defendant to take "'deliberate action' within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state." *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 921 (D. Or. 1999); *see Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1230–31 (9th Cir. 2011) (subjecting the defendant to personal jurisdiction in California because its website "appeal[ed] to, and profit[ed] from, an audience in" California.). In *Millennium Enterprises*, for example, a defendant who operated a generally accessible website was not subject to personal jurisdiction in Oregon because no Oregon residents had purchased the defendant's goods, except for a sham purchaser, and there was no evidence that "defendants otherwise exchanged files electronically with forum residents so as to create 'repeated' or 'ongoing' obligations." *Millennium*, 33 F. Supp. 2d at 920–21 (internal citation omitted).

Here, Defendant's website and activity mirrors that of the defendant in *Millennium Enterprises*. Despite the commercial nature of Defendant's website, no Arizona resident has used the website to purchase Defendant's products. (Doc. 15-1 at 2).[1] Additionally, Plaintiff does not allege that Defendant's website specifically targets consumers in Arizona, as opposed to the worldwide market. Accordingly, because Defendant's interactive commercial website does not satisfy the "something more" standard, it does not justify subjecting Defendant to personal jurisdiction in Arizona.

---

[1] Plaintiff contends that the Court cannot consider Doc. 15-1, the declaration of Defendant's CEO Brock Pasteur, because that declaration was attached to Defendant's motion to dismiss the original complaint, rather than to the motion to dismiss the first amended complaint. (Doc. 25 at 2). Although the original complaint is no longer operative, the Court will still consider the declaration, as the document was attached to at least one of Defendant's motions to dismiss.

### B. Stream of Commerce

Plaintiff further contends that Defendant is subject to personal jurisdiction in Arizona because Defendant's products can be found in at least five stores in Arizona. (Doc. 25 at 6–7). Defendant did not directly sell those products to retailers and consumers in Arizona, but rather sold them to two California distributors. (Doc. 15-1 at 2); (Doc. 25-1).[2] These distributors then, without instruction by Defendant, sold Defendant's products in Arizona. (Doc. 15-1 at 2). Despite the morass of tangled jurisdictional law in the stream-of-commerce context,[3] binding Ninth Circuit precedent provides guidance for resolving this case.

In the Ninth Circuit, merely placing a product in the stream of commerce, without more, is insufficient to confer specific jurisdiction. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015 (9th Cir. 2017); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state" (internal citation omitted)); *Haller v. Advanced Indus. Comput., Inc.*, No. CV-13-02398-PHX-DGC, 2015 WL 854954, at *6 (D. Ariz. Feb. 27, 2015) (finding no specific jurisdiction in Arizona over manufacturer who shipped its products to a distributor in California, who then distributed the product to customers in Arizona, despite the possibility that the manufacturer knew the products would be sold in Arizona, because "there [was] no evidence that [the manufacturer] targeted Arizona by marketing its products to Arizona

---

[2] Defendant contends that one of the distributors was based in Florida; however, Plaintiff proffers a California certificate of incorporation for that distributor. This factual dispute is resolved in Plaintiff's favor for the purposes of this motion. *See Schwarzenegger*, 374 F.3d at 800.

[3] The Supreme Court has twice addressed, and failed to produce a majority opinion, on the requirements for jurisdiction where one introduces a product into the stream of commerce. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102 (1987).

customers or shipping its products directly to Arizona."). For example, in *Williams v. Yamaha Motor Co. Ltd.*, the court held that there was no specific jurisdiction in California over YMC, a foreign company who designed and manufactured allegedly defective engines, whose wholly-owned subsidiary, YMUS, imported and marketed the engines in California. *Id.* at 1023. The *Williams* court reasoned that YMC did not "purposefully direct[]" its engines at California because it did no more than sell the engines to YMUS. *Id.*

Defendant's activity in this case mirrors that of YMC in *Williams*, as Defendant merely manufactured and designed its products, and took no further action of marketing or distributing the product in the forum state. Instead, Defendant sold the product to two California distributors who, without Defendant's direction or knowledge, sold the product to stores in Arizona. Accordingly, Defendant did not purposefully direct its actions at Arizona and is not subject to specific jurisdiction here.

Plaintiff cites two cases from this district in support of his stream-of-commerce claim. (Doc. 25 at 6–7 (first citing *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 2:12-cv-01361-SLG, 2013 WL 12109516 (D. Ariz. Sept. 30, 2013); and then citing *Monje v. Spin Master Inc.*, No. CV-09-1713-PHX-GMS, 2013 WL 2369888 (D. Ariz. May 29, 2013)). Both are distinguishable. The first case, *Isola USA Corp. v. Taiwan Union Technology Corp.*, involved a patent dispute, in which the court found that a Taiwanese manufacturer was subject to specific jurisdiction in Arizona. 2013 WL 12109516. The manufacturer in *Isola* did "more than simply place the accused products into the stream of commerce within the United States," but further "intentionally targeted Arizona because it had notice of Isola, a company headquartered in Arizona, and its patent from . . . prior . . . litigation, yet it ha[d] allegedly continued to infringe the patent and actively induce[d] others to do so" and violated a consent order in the process. *Id.* at \*7. This intentional targeting goes far beyond Defendant's conduct in the present case.

The second case, *Monje v. Spin Master Inc.*, involved a product liability action concerning a toy imported into the United States. 2013 WL 2369888. There, the toy

manufacturer was intimately involved in the design, manufacture, and distribution of the toy. *Id.* at *7–8. With regards to distribution, the manufacturer had an employee oversee the distributor's distribution process, assisted the distributor in obtaining the appropriate testing to market the products in the United States, gave the distributor marketing materials to market the toy in the targeted markets, and did not "relinquish[] full control of distribution to" the distributor. *Id.* Unlike the manufacturer in *Monje*, Defendant here was not intimately involved in the distribution of its product in Arizona, as it did not "direct[] any marketing whatsoever at Arizona residents," was not aware of where the distributors would be selling its products, did not "ever request either distributor to sell any products in the State of Arizona, nor did [Defendant] authorize either distributor as the non-exclusive or exclusive agent for purposes of selling products in Arizona." (Doc. 15-1 at 1–2). Furthermore, Plaintiff has not argued, and there is no evidence, that Defendant retained control over distribution once it sold its product to the distributors. Accordingly, Defendant cannot be subject to personal jurisdiction in Arizona.

**C. Jurisdictional Discovery**

Plaintiff requests that the Court grant leave to conduct jurisdictional discovery if it is inclined to grant Defendant's motion to dismiss for lack of personal jurisdiction. (Doc. 25 at 9). Specifically, Plaintiff seeks to issue "document and deposition subpoenas to Defendant's distributors, and the retail stores located in this district, in addition to document requests targeted at Defendant regarding its contacts with Arizona." (*Id.*)

"[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995)) (alterations in original). Here, Defendant specifically stated that it: (1) was not aware that its products were being sold in Arizona; (2) did not authorize the distributors to act as Defendant's agent for the purpose of selling any products in Arizona; (3) never directly sold its products in Arizona; and (4) did not target Arizona

with marketing materials. (Doc. 15-1). Accordingly, the Court finds that these specific denials justify denying Plaintiff's request for jurisdictional discovery.

**IV. Conclusion**

Pursuant to the foregoing,

**IT IS ORDERED** that Defendant Juggernaut Nutrition, LLC's Motion to Dismiss First Amended Complaint, (Doc. 23), is granted. The Clerk of the Court shall enter judgment dismissing this case without prejudice.

Dated this 14th day of September, 2018.

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge